IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 4:25-cr-34-001 |
| | ) | |
| DEVONTE JERMAINE KELLEY, | ) | |
| | ) | |
| Defendant. | ) | |

SENTENCING POSITION OF THE UNITED STATES

The United States by and through counsel, Assistant United States Attorney Peter G. Osyf, files this Position on Sentencing. For the reasons set forth *infra*, the United States respectfully recommends a sentence consistent with statutorily restricted guideline provision.[1] Specifically, the United States recommends a sentence of 60 months of imprisonment.

**Statutory Considerations**

The defendant pleaded guilty on August 26, 2025, to Dealing in Firearms Without a License, in violation of 18 U.S.C. § 922(a)(1)(A), which carries a maximum term of imprisonment of 5 years. The Court may sentence the defendant to any term of imprisonment up to 5 years.

**Impact of the Plea Agreement**

The parties entered into a plea agreement and the United States acknowledges the defendant's acceptance of responsibility for the offense. Accordingly, the offense level is

---

[1] The guideline custody range for the defendant's total offense level of 31 and criminal history category I is 108 to 135 months. However, the statutory maximum for the defendant's offense of conviction, Count 2, is 5 years. Therefor, the defendant's statutorily restricted guideline provision is 60 months. *See* Presentence Report, ¶¶ 76 - 77.

1

decreased by two levels pursuant to U.S.S.G. § 3E1.1(a). Additionally, because the defendant's timely notification of his intention to enter a plea of guilty, permitted the United States to avoid preparing for trial and permitted the United States and the court to allocate their resources efficiently, the United States filed a motion for an additional point reduction under U.S.S.G. § 3E1.1(b).

**Sentencing Guidelines Calculation**

The United States Probation Department prepared a pre-sentence report (PSR) which detailed the offense of conviction and the characteristics of the defendant. In calculating the offense level for the defendant, the probation office assigned a base offense level of 20 pursuant to U.S.S.G. §§ 2X1.1(c)(1); 2K2.1(a)(4)(B)(i)(I); and (ii)(I). A four-point enhancement was added pursuant to U.S.S.G. § 2K2.1(b)(1)(B) because the offense of conviction involved 8 to 24 firearms. An additional four points were added to defendant's offense level because she was engaged in the trafficking of firearms, warranting the enhancement under U.S.S.G. § 2K2.1(b)(5). Another four-point enhancement was attributed to the defendant pursuant to U.S.S.G. § 2K2.1(b)(6)(B) because the defendant used or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense. In accordance with U.S.S.G. § 3B1.1(c), two more points were added to defendant's offense level because she was an organizer, leader, manager, or supervisor in any criminal activity. These enhancements increased the defendant's adjusted offense level to 34. Applying the three-point reduction addressed above, the defendant's total offense level is 31.

The probation officer also calculated a criminal history level for the defendant. The defendant had only one prior criminal conviction for No Valid Operator's License (1st Offense) for which she received zero (0) criminal history points. The total of zero (0) criminal history points establishes a criminal history category of I pursuant to U.S.S.G. Chapter 5, Part A.

As a criminal history category I defendant with an offense level of 31, the defendant's sentencing guidelines range is 108 to 135 months. However, the statutory maximum for the defendant's offense of conviction is 5 years, restricting her guideline provision to 60 months.

**Unresolved Objections to the PSR**

The defendant maintains a number of objections to the PSR. *See* PSR at 25 - 26. None of the defendant's objections, however, articulate the requisite basis to be meritorious. Rather, she simply does not like, or she disagrees with the Probation Office's findings. Neither is a sufficient basis, and her objections should be overruled.

<u>*Defendant's Objection*</u>

The defendant makes no specific arguments questioning the reliability of the information upon which Probation made its findings but instead, generally objects to Probation's findings without explanation. A defendant's self-serving objection to Probation's findings without support is not the standard. Without explanation as to why the information relied upon by the Probation Office is insufficient, the defendant simply disputes the information she does not like or does not agree with. The defendant's bald objections are insufficient. "If the defendant's objection to a particular PSR finding fails to articulate the reasons why the facts asserted are <u>unreliable, untrue or inaccurate</u>, the district court need not undertake an in-depth review. Without an affirmative suggestion that the PSR recommendation is unsound, the court is 'free to adopt the findings of the [PSR] without more specific inquiry or explanation.'" *United States v. Williams*, 152 F.3d 294, 301 (4th Cir. 1998) quoting *United States v. Terry,* 916 F.2d 157, 162 (4th Cir.1990) (emphasis added). "In other words, 'the Government carries its burden if a defendant fails to properly object to a recommended finding in a presentence report that the court determines to be reliable.'" *Williams*, at 301 quoting *United States v. Gilliam*, 987 F.2d 1009, 1013 (4th Cir. 1993).

3

In another case quoting *Terry*, "mere objection to the finding in the presentence report is not sufficient.... Without an affirmative showing the information is inaccurate, the court is free to adopt the findings of the [presentence report] without more specific inquiry or explanation." *United States v. Love*, 134 F.3d 595, 606 (4th Cir. 1998) quoting *Terry,* at 162 (internal quotation marks omitted).

The defendant makes no claim, nor is there evidence to support, that the information relied upon by the Probation Office – to include police reports and the defendant's own text messages (all produced in discovery) – are unreliable, untrue, or inaccurate. Therefore, the defendant's objections should be overruled.

**Statutory Sentencing Factors under 18 U.S.C. § 3553(a)**

As outlined *supra*, the appropriate sentencing guideline provision for the defendant here is statutorily restricted to 60 months – less than half of her calculated advisory guidelines range based on offense level and criminal history category. The United States will now briefly address the statutory factors that support its recommendation for a sentence of 60 months.

A.    Nature of the Offense

The defendant's offense of conviction involved the unlawful purchase, possession, and dealing of 20+ firearms, many of which were subsequently seized by law enforcement after having been used in criminal conduct. Knowing she was unlawfully purchasing handguns for her underaged son, the defendant, with the assistance of her codefendant – also her biological son – conspired to unlawfully deal in firearms for a profit. The scheme was simple but effective. The defendant straw purchased a number of specific firearms for her son to further transfer downstream to his established network of customers. The defendant knew she was not the lawful purchaser of the firearms, lied on federal forms to obtain the firearms, and provided the firearms to her son who sold the firearms down the line. Neither the defendant nor her son were licensed firearms dealers.

Both defendants played vital roles in the conspiracy and they were only successful because of the key aspects each played. Both were organizers and managers of different parts of the business scheme. The defendant's son planned, advertised, marketed, and facilitated the unlawful transactions to downstream customers, while the defendant planned, funded, and generally managed the operation – often interjecting with business advice for her son – in addition to lying on federal forms to purchase most of the subject firearms.

Firearms, by their very nature and design, are dangerous. They pose a significantly greater threat when in the hands of an unlawful user. Here, the defendant was knowingly straw purchasing firearms to her underaged son (at the start of the conspiracy) and knew the firearms were further being sold to prohibited individuals – underscoring the policies supporting such prohibitions. In addition to the Statement of Facts, paragraphs 9 - 15 of the PSR further outline the scope of the defendants' joint operation as well as the detrimental effect upon the community. Specifically, paragraphs 14(a) - (k) demonstrate the danger posed by the defendant's conduct.

The nature of the defendant's offense is egregious and should weigh heavily upon the Court's consideration.

B.    History and Characteristics of the Defendant

The defendant is a 45-year-old female, born and raised in Lancaster County, Virginia. (PSR pg. 2 & ¶¶ 47 - 48). The defendant's upbringing offers no explanation for her choosing such brazenly dangerous criminal conduct this late in life. Other than her parents divorcing when she was 4 or 5 years old and seemingly enduring some financial difficulties in childhood, the defendant's youth appears to have been a happy one with a large, loving extended family who supports one another. (PSR ¶¶ 48 - 52). The only notable negative aspect of her youth stems from the domestic violence she witnessed from her abusive father towards the defendant's mother and other women. (PSR ¶ 49). Thankfully, the defendant herself "never experienced physical or sexual

5

abuse" and she was "always provided with the basic necessities." The defendant enjoyed school growing up and she "participated in the school's band, girls' basketball, track, and the cheerleading team." (PSR ¶ 50).

Although the defendant does suffer some minor physical ailments, she is in relatively good physical condition given her age. (PSR ¶¶ 55 - 59). Aside from being treated for anxiety and depression since 2024, the defendant is also relatively mentally and emotionally healthy as well. (PSR ¶¶ 60 - 62). As for substance abuse issues, there is some dispute here. While the defendant denies any substance use history, text exchanges between the defendant and her son tell a slightly different story. However, whether the defendant has never consumed illicit substances, or if she is a regular user of marijuana, there is no indication that the defendant is a drug addict to the extent that it might at least explain, if not excuse, her criminal conduct. Put plainly, there is no evidence or allegation that the defendant was a desperate heroin fiend, for example, who *had* to sell firearms to facilitate her habit. Not at all. Once again, the defendant seems to be of clear and perfectly functional mind; she simply chose to engage in this illicit scheme and endanger everyone in her community.

The defendant graduated from Lancaster High School in June 1999 and also has taken some college courses as well as earned multiple trade and service certifications. (PSR ¶¶ 64 - 68). The defendant has steady employment record. (PSR ¶¶ 69 - 72).

C.    Need for Just Punishment

The defendant's reckless conduct, utter disregard for the safety and well-being of others, and the life-and-death danger posed by the defendant's offense of conviction are the government's main concerns. It seems clear that the defendant simply does not care who may get hurt, injured, or even possibly killed due to her choices and desire to make some extra cash.

The flagrant disregard for the law; reckless endangerment of others; and the intentional

6

choice to be a destructive force in her neighborhood and community, risking the lives of all those around her on a regular basis, warrants just punishment.

D.    Deterrence

The two types of deterrence at issue are general and specific. On the issue of general deterrence, the public must have confidence that the activities of the defendant are treated with the utmost seriousness. The public must look at the actions of the defendant; complete and utter disregard for the law and unlawfully dealing inherently dangerous, life-threatening weapons without a license, and know that such conduct commands a significant punishment. The value of life, of crime free communities, and of societal stability are expressed in the sentence assigned to the defendant. Those inclined to consider committing crimes like those of the defendant must be made to pause and think about the consequences that follow.

As for specific deterrence, it is difficult to say what may specifically deter this defendant from reoffending given that why she engaged in this criminal conduct in the first place is unclear. But one thing is certain, the defendant *chose* to engage in this incredibly dangerous criminal endeavor. The defendant's repeated flagrant disregard for the law indicates a lack of concern for consequential action and some term of incarceration is warranted.

E.    Need to Protect Society

The United States urges the Court to consider this factor heavily. While one may look at the defendant's case from a sympathetic posture, one where the defendant may have simply fallen on hard times and thought she could make some extra money helping her son, such a position does not warrant risking the safety and lives of others. The defendant's reckless conduct indicates that society is in great need of significant protection from her given the inherent dangerousness of her conduct and insistence on possessing and dealing firearms to others.

F.      Avoiding Sentencing Disparities

The defendant and her conspiring son are rightly facing the same guideline provision exposure here and should be sentenced to the same 60-month term of incarceration. Both demonstrated their wanton disregard for the well-being of others and the safety of their community. Both were equally culpable in planning, executing, maintaining, and managing this dangerous scheme and neither would have been successful without the other. The defendant relied on her son for his connections, marketing skills, deal-making ability, and willingness to carry out the downstream transactions. The defendant's son equally relied on the defendant's financial backing, business acumen, as well as her age, ability, and willingness to unlawfully purchase the firearms for him.

Both defendants are receiving remarkable benefits from the statutory cap of their offenses of conviction. This reason alone likely causes an unwarranted sentencing disparity with other similarly situated defendants who may have pleaded guilty to a different offense. Any downward variance would only increase any such disparities. A sentence of 60 months for both defendants is fair, just, and minimizes any sentencing disparities already created by the benefits received by the defendant here.

8

**Conclusion**

The United States is primarily concerned with the reckless endangerment of the public as a result of the defendant's prolonged illicit conduct. For the safety of the community, a sentence consistent with the statutorily restricted guideline provision, specifically, 60 months of imprisonment, is sufficient but not greater than necessary to accomplish the goals of sentencing.


Respectfully submitted,


LINDSEY HALLIGAN
UNITED STATES ATTORNEY AND SPECIAL ATTORNEY

TODD W. BLANCHE
DEPUTY ATTORNEY GENERAL

ROBERT K. MCBRIDE
FIRST ASSISTANT UNITED STATES ATTORNEY


By:    _____/s/_____
       Peter Osyf
       Assistant United States Attorney
       United States Attorneys' Office
       One City Center
       11815 Fountain Way, Suite 200
       Newport News, Virginia 23606
       Tel. (757) 591-4000
       Fax: (757) 591-0866
       Peter.Osyf@usdoj.gov

**<u>Certificate of Service</u>**

I certify that on January 6, 2026, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system who will send notification of such filing (NEF) to all counsel of record.

By: _____/s/_____

    Peter G. Osyf
    Assistant United States Attorney