UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Case No. 4:25-cr-34-001 |
| ) | |
| LALITA JANE OWENS, ) | |
| ) | |
| Defendant.  ) | |

**DEFENDANT'S POSITION REGARDING SENTENCING FACTORS**

Lalita Jane Owens is the last person you would expect to see named as a defendant in a criminal case. Yet, for two-to-three-year period out of her 45 years, she admittedly lost her way when she found an illegal and dangerous way to supplement her income. She never set out to make communities unsafe. However, she understands the consequences of her actions and acknowledges the severity of the charge against her. She accepts responsibility for her actions[1] and understands that she put the safety of her community at great risk.

Lalita Jane Owens has reviewed the Presentence Report ("PSR"), has separately filed a pleading noting her unresolved objections to the PSR (ECF No. 53), and with this pleading, states her position regarding the statutory sentencing factors.

**Procedural Summary**

Mrs. Owens was named in a five-count indictment returned by an Eastern District of Virginia Grand Jury in Newport News, Virginia on May 12, 2025. ECF No. 1. On August 26, 2025, Mrs. Owens appeared before this Court and pled guilty to Count Two of the indictment pursuant to a written plea agreement. ECF Nos. 40, 41. Count Two charges her with dealing in firearms without a license in violation of 18 U.S.C. § § 922(a)(1)(A), 923(a), 924(a)(1)(D), and 2.

---

[1] Mrs. Owens wrote a letter to the Court, and it has been filed with this position paper as an exhibit. *See* Exhibit 1.

1

ECF No. 1. Her guilty plea was accepted, she was found guilty as charged, and sentencing was scheduled for January 20, 2026, at 1:30 p.m. ECF No. 40.

## Compliance While Awaiting Trial and Sentencing

Mrs. Owens was arrested on May 14, 2025. ECF No. 15. She was released on a personal recognizance bond on conditions that included supervision by the U.S. Probation Office. ECF No. 9. In the eight months that have followed, Mrs. Owens has abided by the Court's conditions of release. PSR ¶ 5.

## The Appropriate Sentence is Probation with Twenty Four Months' Home Confinement

The current advisory guideline range is restricted by the statutory maximum term of five years.[2] The sentence recommended by the current guideline range is significantly greater than necessary to accomplish the purposes of sentencing stated in 18 U.S.C. § 3553(a). The more appropriate sentence is probation that includes a special condition of 24 months' home confinement.

The Court well knows that the Sentencing Guidelines are advisory and are only one aspect of the sentencing analysis. *United States v. Booker*, 543 U.S. 220, 260-61 (2005). Since *Booker*, the Supreme Court has consistently and significantly broadened the range of choices in sentencing dictated by the facts of the case. *See Gall v. United States*, 552 U.S. 38, 59 (2007); *see also Kimbrough v. United States*, 552 U.S. 85 (2007); *Rita v. United States*, 551 U.S. 338, 350–51 (2007); *Cunningham v. California*, 549 U.S. 270, 286–87 (2007). As a result, "[a] district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due

---

[2] The presentence report reflects a total offense level of 31 and a criminal history category of I, which yields an advisory guideline range of 108 to 135 months' imprisonment; however, the statutory maximum term for the count of conviction is five years (sixty months). *See* PSR ¶ ¶ 76, 77.  As noted, the defense has filed Objections to the Presentence Report and is optimistic that the resulting guideline range will be lowered.  *See* ECF No. 53.

consideration) the advice of the Guidelines." *Kimbrough*, 552 U.S. at 113 (Scalia, J., concurring). A sentencing court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50.

Congress requires federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of 18 U.S.C. § 3553(a). The sufficient-but-not-greater-than-necessary requirement is often called the "parsimony provision." This requirement is not just another factor to be considered along with the others in § 3553(a); rather, it sets an independent limit upon the sentence. In this case, incarceration of Mrs. Owens is not necessary.

### The Nature and Circumstances of the Offense

The offense conduct section of the PSR details the facts of Mrs. Owens's unlawful dealing in firearms without a license. Essentially, between April 16, 2020, and April 29, 2024, she sold and transferred twenty-two (22) guns for profit but has never been a licensed dealer of firearms. Mrs. Owens financed the purchases while her son and co-defendant, Devonte Kelley, told her which guns to buy. Mr. Kelley also organized the transfer of the guns to third parties and negotiated the prices. Mr. Kelley initially could not buy guns on his own, as he turned 21 years old during the course of the illegal conduct. Many of the guns Mrs. Owens bought and gave Mr. Kelley ended up in the hands of gang members and/or at crime scenes in various cities and counties in Virginia and in Maryland. All but four of the guns were recovered.

On July 6, 2022, Mrs. Owens spoke willingly with law enforcement agents. Ultimately, she admitted that she bought and sold guns to supplement her income because she was experiencing financial hardships resulting from a marital separation. She confirmed her signature on the gun transaction forms and confirmed her cellphone number. Both items were key parts of the criminal investigation. Notably, though, Mrs. Owens claimed that Mr. Kelley did not know

about her activities. However, text messages between the two showed that he was the driving force behind the transactions.

The text messages also showed that Mrs. Owens had concerns about the third-party transfer of the guns. For example, on April 23, 2021, she texted Mr. Kelley and a third individual:[3]



---

[3] These text messages appear on Bates PROD001_00005018 which was provided within a collection of text messages from the Cellebrite Extraction Report of Mrs. Owens phone. The text messages in this report span from July 23, 2020 to August 3, 2022. Defense counsel will provide a copy upon request.

4



Those concerns did not go away. On November 19, 2021, she texted Mr. Kelley:[4]



Perhaps prophetically, on May 6, 2022, Mrs. Owens warned Mr. Kelley:[5]

---

[4] This text message appears on Bates PROD001_00004929 which was provided within a collection of text messages from the Cellebrite Extraction Report of Mrs. Owens phone. The text messages in this report span from July 23, 2020 to August 3, 2022. Defense counsel will provide a copy upon request.

[5] This text message appears on Bates PROD001_00005007 which was provided within a collection of text messages from the Cellebrite Extraction Report of Mrs. Owens phone. The text messages in this report span from July 23, 2020 to August 3, 2022. Defense counsel will provide a copy upon request.



Mrs. Owens was not arrested until May 14, 2025.

Mrs. Owens does not dispute the basis of her conviction, and she acknowledges the extreme seriousness of the offense. She accepted full responsibility at her guilty plea hearing. When Mrs. Owens was interviewed by the probation officer, she acknowledged the accuracy of the Statement of Facts and expressed remorse. PSR ¶ 25.

### Lalita's Personal History and Characteristics

In this context, Lalita's story is one best viewed as mile markers or chapters. The first chapter is her childhood and the second is her relationship with men.

I.      Weathering the Storm

Lalita was not raised in a home where two parents openly loved and cared for each other, worked together to provide for the family, and shepherded the family through life's struggles. Many people were not raised in this environment, and that is okay. What is not okay, though, is that Lalita only had her father in the home for the first four or five years of her life and what she saw of him was anything but loving. Her father beat her mother with his fists, often leaving bruises and pain that required medical attention. While her father surely loves his children, his abusive tendencies towards his wife sadly blurred Lalita's understanding of how a healthy relationship with men should look. Lalita's mom tried to shield Lalita and her siblings from seeing the horror,

6

but the task was often daunting and unsuccessful. She eventually found her strength and the courage to leave her husband.

When her parents split up, Lalita, her mother and siblings moved into her great-grandmother's home. Lalita lived in the three-bedroom home with *nine* other people. A stove provided heat for the home, but an *outhouse* served as the bathroom and the family had to boil water to bathe.

The meager circumstances of Lalita's childhood were the perfect backdrop for what may have been her most valuable lesson. She watched her mother work multiple jobs to make ends meet, including a transition into a career as a certified nursing assistant. Lalita later obtained that same certification and dedicate her life to caring for the sick. But before that, a 14-year-old Lalita got a worker's permit and worked at a local seafood factory and thereafter worked at a Hardee's and then a McDonald's. By working as soon as she was legally able to do so, Lalita clearly understood the value of having a strong work ethic. She weathered the storm.

II. A Cycle of Abuse

Sadly, Lalita failed at her own task (a promise, really) of never letting a man do to her what her father did to her mother. At 20 years old, she gave birth to her first child, codefendant Devonte Kelley. She and Mr. Kelley's father's relationship ended three months after Devonte's birth because they could not get along. Devonte's father punched Lalita in the face causing her eye to swell shut. Like her mother before her, Lalita had to seek medical attention and saw a specialist for a time.

What Lalita could not have seen coming was the abuse – albeit verbal – from her son Devonte. The relationship a parent has with a teenager/young adult can be tumultuous but there

was a little more here. Text messages between the two show just how tumultuous. Lalita expressed a mother's love. For example, on September 29, 2021, she texted:[6]





---

[6] These text messages appear on Bates PROD001_00004908 which was provided within a collection of text messages from the Cellebrite Extraction Report of Mrs. Owens phone. The text messages in this report span from July 23, 2020 to August 3, 2022. Defense counsel will provide a copy upon request.

For his part, Devonte expressed some pretty harsh words. On October 21, 2020, he texted:[7]



Lalita has been immersed in a cycle of abuse that began in her childhood and has yet to end.

---

[7] These text messages appear on Bates PROD001_00004917 which was provided within a collection of text messages from the Cellebrite Extraction Report of Mrs. Owens phone. The text messages in this report span from July 23, 2020 to August 3, 2022. Defense counsel will provide a copy upon request.

9

Chapters one and two are troubling but Lalita's story is far from complete. And that is because this woman is a self-starter and a thriver! She has worked since she was teenager, got an education, and now uses her gifts and talents to improve the lives of the sick. What more could society ask of its citizens? Sure, she violated the community's trust, and she is ready to accept her punishment for that. But her life's work has been serving as a healer. How she has spent her days since being arrested shows her true character. Expecting good citizenry from Lalita is not a hard ask. It is closest to how she has spent most of her life. This is clear from the letters written by her friends and colleagues.[8]

### The Requested Sentence Reflects the Seriousness of the Offense, Promotes Respect for the Law and Provides Just Punishment

Sentencing Mrs. Owens to probation with 24 months' home confinement is the appropriate punishment for her crime. The requested sentence also reflects the seriousness of her crime and promotes respect for the law. Probation with home confinement is also punishment as it will be a restriction of her liberty.

This felony conviction comes with significant collateral consequences. Mrs. Owens will lose several valuable rights she holds dear, including but not limited to the right to vote, serve in public office, and to possess a firearm. This for someone whose has only ever been convicted of a traffic offense (no driver's license). The felony conviction is an inescapable brand that will make Mrs. Owens' life more difficult and the weight of that should be taken into the Court's consideration. Two years is also a long time to abide by the conditions of home detention. Mrs. Owens will be under the watchful eye of a federal probation officer and her every move will be tracked for over two years. Notably, though, her compliance throughout the pretrial process suggests that she will succeed at resuming her life as a law-abiding citizen.

---

[8] These letters have been filed as a collective exhibit. *See* Exhibit 2.

### The Requested Sentence Will Afford Adequate Deterrence & Protect the Public

A sentence of probation with 24 month's home confinement is enough to deter Mrs. Owens from repeating her criminal conduct. Her pretrial compliance proves that specific deterrence has begun. For similar reasons, there is no reason to believe that Mrs. Owens poses any danger to the public since she is unlikely to engage in criminal conduct in the future.

### Educational/Vocational Training, Medical Care, or Other Correctional Treatment

Though already educated, someone as studious and diligent as Mrs. Owens would likely take advantage of BOP programs to increase her skills should the Court impose a custodial sentence. However, as for medical care and other correctional treatment, incarceration will only disrupt her most significant need, which is the continuation of her mental health treatment in its current form. And mental health counseling and treatment is best provided for out of custody – another reason incarceration is not appropriate for Mrs. Owens.

### Conclusion

A term of incarceration would be more punitive than necessary considering Mrs. Owens' history and characteristics, including her lack of a criminal history and unlikelihood of engaging in criminal activity in the future. The defense respectfully requests that this Court impose a sentence of probation with a special condition of 24 months' home confinement. This sentence would be sufficient but not greater than necessary to fulfill the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

LALITA JANE OWENS

By: _____/s/_____
Keith Loren Kimball

Virginia State Bar No. 31046

Sean Carlton Mitchell
Virginia State Bar No. 90922

Office of the Federal Public Defender
500 East Main Street, Suite 500
Norfolk, Virginia 23510
Telephone: (757) 457-0800
Telefax: (757) 457-0880
Email: keith_kimball@fd.org
       sean_mitchell@fd.org

<u>Attorneys for Lalita Jane Owens</u>

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of January 2026, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

I further certify that I will send the document by electronic mail to the following non-filer:

>Joshua Coleman
>Senior United States Probation Officer
>600 Granby Street, Suite 230
>Norfolk, Virginia 2350
>Email address:  joshua_coleman@vaep.uscourts.gov

>/s/
>Keith Loren Kimball
>Virginia State Bar No. 31046
>
>Sean Carlton Mitchell
>Virginia State Bar No. 90922
>
>Office of the Federal Public Defender
>500 East Main Street, Suite 500
>Norfolk, Virginia 23510
>Telephone: (757) 457-0800
>Telefax: (757) 457-0880
>Email: keith_kimball@fd.org
>           sean_mitchell@fd.org
>
>Attorneys for Lalita Jane Owens